**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**RONNIE D. FULWOOD,**

    **Plaintiff,**

**v.**                                                **Case No.  8:05-cv-175-T-17TBM**

**COMMERZBANK AG, et al.,**

    **Defendants.**
_____/

**REPORT AND RECOMMENDATION**

THIS MATTER is before the court on referral by the Honorable Elizabeth A. Kovachevich for a Report and Recommendation on **Plaintiff's Motion for Temporary Restraining Order - Pursuant to Fed. R. Civ. P. 65(b) and Local Rules 4.05 & 4.06 - For Preservation, Inventorying & Limited Production of Documents From, To and/or Involving Andreas de Maiziere (Board Member of Defendant Commerzbank) Referencing Any of the Defendants or Third Parties, and the Bonds Which are the Subject of This Litigation** (Doc. 105), Plaintiff's Memorandum of Law in Support (Doc. 106), the Defendant Commerbank AG's response in opposition (Doc. 120).

I.

This is Plaintiff's third request for the entry of a temporary restraining order.  The facts of this case were set forth previously in the Report and Recommendation on the Plaintiff's first motion for injunctive relief.  See (Doc. 9).  For ease of reference, they are set forth again.

Plaintiff Ronnie D. Fulwood is a resident of Florida and a strawberry farmer. By his allegations, he is the owner of certain Dawes & Young bonds that are the subject of this lawsuit. Defendant Commerzbank AG (hereinafter "Commerzbank") is a bank located in Frankfurt, Germany. Defendant H.I.H. Prince Guilio Bissiri Mekonen Haile Selassie (hereinafter "Bissiri") is an individual whose principal residence is in Rome, Italy. Bissiri allegedly became involved with Plaintiff's efforts to redeem his Dawes & Young Bonds. Defendant Amdec Worldwide Holdings S.A. (hereinafter "Amdec") is a company with its principal residence in Luxembourg and is owned and controlled by and/or is the alter-ego of Bissiri. Defendant Etienne Real Estate (hereinafter "Etienne") is a company with its principal residence in the British Virgin Islands and is owned and controlled by and/or is the alter-ego of Bissiri and/or Amdec. Defendant Securicor-Mat Securitas Express AG (hereinafter "Via Mat") is a private delivery company with offices throughout Europe and United States.

Plaintiff presents a brief history of Dawes & Young Bonds that places his allegations into context. By his account, following World War I, Germany was forced to make reparation payments. In an effort to assist Germany's burdens, a bond issue was created and named the "Dawes Bonds," after Senator Dawes, who devised the plan. From 1924 to 1930, the bonds were sold to American citizens in over eight-five issues and denominated in United States gold dollars. The final issue sold in 1930, called the "Young Bonds," also named after a United States Senator, was designed to assist Germany in repaying the Dawes Bonds. When Hitler came to power in 1933, all of the Dawes & Young Bonds went into default and remain in default today. In 1952, after the close of World War II, a series of meetings were held in London concerning the payment of Germany's pre-war and post-war debt. German officials

and German public and private financial institutions accepted full responsibility for the country's pre-ward debt, including the Dawes & Young Bonds. This agreement was called "The Agreement on German External Debts," or the "London Debt Accord." By Plaintiff's allegations, the London Debt Accord essentially placed a moratorium on repayments to Dawes & Young Bondholders for at least forty years; new bonds were exchanged for the old bonds, and the new bonds could not be presented for redemption until April 15, 1994. Plaintiff asserts that the bonds with an original face value of $1,000.00 U.S. gold dollars represents a payment obligation of $740,000.00 for Dawes Bonds and $380,000.00 for Young Bonds.

Plaintiff alleges that he has equitable, legal, and beneficial rights, control, and interest in between 750 to 11,450 of the Dawes & Young Bonds. He claims that he presented his bonds for redemption, but he was never paid for them. More specifically, Plaintiff alleges that Bissiri claimed to have the authority from the bond issuers to negotiate with Plaintiff about the redemption of his Dawes & Young bonds. Bissiri represented that he had secured for Plaintiff an agreement for payments to be made in 2003 and/or 2004, and thus induced Plaintiff to deposit, using the transportation services of Via Mat, his bonds into an account at Commerzbank, possibly an account opened in the name or control of Bissiri, Amdec, and/or Etienne. Plaintiff alleges that Commerzbank held itself out to the public as a banking institution authorized and competent to receive, hold, and keep secure Plaintiff's Dawes & Young Bonds until they were redeemed and paid for or until Plaintiff requested their return. According to Plaintiff, however, Commerzbank has refused to pay Plaintiff the redemption price or to return the bonds.

3

Plaintiff initiated this action on January 27, 2005.  By Count I, "Payment for Plaintiff's Property and Damages from Wrongful Retention of Plaintiff's Property," Plaintiff seeks damages against Commerzbank for the fair market value of his Dawes & Young Bonds at the time they were deposited with the Commerzbank; damages for Commerzbank's wrongful retention of the bonds and failure to return the bonds; replevin and/or return of Plaintiff's bonds; attorney's fees and costs; and such other damages and relief as the court deems just and equitable.  By Count II, "Production of Documents," Plaintiff seeks a judgment compelling all Defendants to produce numerous documents that are in their custody, possession, and/or control.  By Count III, Plaintiff seeks "Damages from Refusal, Delay and/or Interference with Production of Documents."

II.

Rule 65 of the Federal Rules of Civil Procedure governs the entry of a temporary restraining order (hereinafter "TRO") and a preliminary injunction.  The purpose of a TRO is to protect the movant from irreparable injury and preserve the status quo until the district court can enter a decision on a preliminary injunction application, while a preliminary injunction maintains the status quo until the court can enter a final decision on the merits of the case.  United States v. DBB, Inc., 180 F.3d 1277, 1282 n. 5 (11th Cir. 1999); see also Canal Auth. of Fla. v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974).[1]  Pursuant to Rule 65(b), a TRO may be granted without notice to the opposing party if (1) specific facts set forth in an

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

4

affidavit or verified complaint demonstrate that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.  Fed. R. Civ. P. 65(b).

In contrast, Rule 65(a) provides that no preliminary injunction shall be issued without notice to the adverse party.  Fed. R. Civ. P. 65(a)(1).  A party seeking entry of a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) irreparable injury if the injunction is not granted; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.  Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003); McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998); Haitian Refugee Ctr., Inc. v. Baker, 949 F. 2d 1109, 1110 (11th Cir. 1991).  A preliminary injunction is an extraordinary and drastic remedy and should not be granted unless the movant clearly establishes all four elements. Horton v. City of St. Augustine, Fla., 272 F.3d 1318, 1326 (11th Cir. 2001); McDonald's Corp., 147 F.3d at 1306.  A plaintiff may support his motion for a preliminary injunction by setting forth allegations of specific facts in affidavits.[2]  See M.D. Fla. R. 4.05(b)(2), 4.06(b)(3).

---

[2]In considering a motion for preliminary injunctive relief, a district court may rely on affidavits and hearsay materials that would not be admissible as evidence for entry of a permanent injunction.  Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir. 1995).

5

III.

By his instant motion, Plaintiff contends that emergency relief is warranted "based upon the extraordinary and recently discovered events concerning defendant Commerzbank's former Board Member Andreas de Maiziere's suddenly and unexplained 'resigning' and of his and/or Commerzbank's alleged involvement with 'money laundering schemes or investigations' and because evidence, documents and/or testimony from Andreas de Maiziere are relevant to plaintiff's claims . . ." (Doc. 106 at 7). Thus, Plaintiff seeks an Order enjoining Defendants[3] from destroying, and directing Defendants to inventory and produce, any documents related to:

1. The file maintained by Andreas de Maiziere in his offices or under his control at defendant Commerzbank related to plaintiff Fulwood, or his claims against Defendant Commerzbank and/or related to defendant Commerzbank's proposed and/or actual role as the "Trust" or "Agent" Bank for receipt, deposit and ultimate payment of monies for plaintiff Fulwood's Bonds, which are the subject of this complaint;

2. Correspondence or documents exchanged during the period from June 14, 2004 to March 1, 2005 between Andreas de Maiziere, on the one hand, and Terrence Sweeney Esq., Julius Kimmle Esq., and any other person within defendant Commerzbank, on the other hand related to the claims by plaintiff Fulwood, the Bonds which are the subject of this litigation and/or any of the other defendants named herein;

3. Correspondence documents exchanged from January 14, 2004 forward by, between or involving Andreas de Maiziere and the "Deposit Receipt" on which his name appears and which has or makes reference to plaintiff Fulwood's bonds scheduled to or being received by Commerzbank on or about March 23, 2003, or the deposit of plaintiff Fulwood's Bonds into a "trust account" at Commerzbank, and/or the "block" placed on plaintiff Fulwood's Bonds placed thereon by defendant Commerzbank and in favor of The Deutsche Bundesbank a/k/a The German National Bank;

---

[3]While Plaintiff references "Defendants," it is unclear whether his motion relates only to Commerzbank or to all Defendants.

6

  4. Correspondence or documents exchanged from January 1, 2002 forward by, between or involving Andreas de Maiziere and third parties including but not limited to the Deutsche Bundesbank a/k/a The German National Bank related to defendant Commerzbank's proposed and/or actual involvement, independent and/or acting on behalf of others, with or for the receipt, deposit and ultimate payment of monies for plaintiff Fulwood's Bonds which were caused to be transferred to defendant Commerzbank on or about March 23, 2003 and which is/are referenced in the "Deposit Reciept" atached as Exhibit 1 to the July 27, 2005 Fulwood Affidivit; and

  5. Correspondence or documents from Jan. 1, 2002 that were received directly or indirectly by Andreas de Maiziere from third parties including but not limited to the Deutsche Bundesbank a/k/a The German National Bank, or any others related to defendant Commerzbank's proposed and/or actual role as the "Trust" or "Agent" bank for the receipt, deposit and ultimate payment of monies for plaintiff Fulwood's.

(Doc. 105 at 2-3; Doc. 106 at 3-5). In support thereof, Plaintiff submits (1) his verification of the allegations contained in the motion, (2) copies of three recent news articles which report that Commerzbank and de Maiziere are at the center of a money-laundering investigation linked to Russian telecommunications assets, and that de Maiziere's office has been searched by prosecutors, and (3) a document entitled "Deposit Receipt" dated January 14, 2004, which has on it de Maiziere's name and which Plaintiff alleges shows the deposit of his bonds at Commerzbank. (Doc. 106 at 7, Exhs). Plaintiff asserts that de Maiziere appears to be one of the key players involved in this case, and he is concerned about the files that were in de Maiziere's possession because they do not seem to be related to the investigation underway and thus are not preserved or secured by the authorities. Plaintiff asserts further that these circumstances "could directly impact" his case. Id. at 3.

  Commerzbank urges the court to deny Plaintiff's motion in its entirety on the basis that Plaintiff fails to address any factor other than his speculative claim of irreparable injury.

7

By its account, the reports of an investigation are unrelated to Plaintiff's allegations in this case, it denies the existence of the documents Plaintiff seeks to preserve, and it reiterates that it remains aware of its obligations under the Federal Rules of Civil Procedure. Additionally, Commerzbank states that its "counsel has been advised that his [de Maiziere] existing files as well as his email have been secured." (Doc. 120 at 2).

Insofar as Plaintiff seeks the issuance of a TRO, the court agrees with Commerzbank that Plaintiff essentially seeks the entry of a preliminary injunction, not a TRO. Compare Fed. R. Civ. P. 65(a) with Fed. R. Civ. P. 65(b). Here, Commerzbank not only was on notice of Plaintiff's motion, it filed a response in opposition. Thus, Plaintiff's motion for a TRO should be denied on this basis.

Plaintiff's request for the entry of a preliminary injunction should also be denied. Although Plaintiff asserts "irreparable injury," at best, his assertions of document destruction in the de Maiziere matter is speculation on his part. See Siegel v. LePore, 234 F.3d 1163, 1176-77 (11th Cir. 2000) (stating that irreparable injury must be actual and imminent). Moreover, although not verified, Commerbank's counsel represents that de Maiziere's files and emails have been secured and that it fully understands its obligations regarding the preservation of evidence under the federal rules.[4] As for the other prerequisites for the entry of a preliminary injunction, Plaintiff makes no attempt to address them.

---

[4] This court accepts that such assertions by counsel would not be made if they were not true and correct and that appropriate procedures and safeguards are in place at Commerzbank to assure against the destruction or loss of evidence related to the allegations in this suit.

IV.

Accordingly, based on the foregoing reasons, it is RECOMMENDED that the court DENY Plaintiff's motion (Doc. 105) insofar as he seeks the entry of a temporary restraining order and DENY the motion (Doc. 105) with respect to Plaintiff's request for a preliminary injunction.

> Respectfully submitted on this
> 17th day of August 2005.
>
> THOMAS B. McCOUN III
> UNITED STATES MAGISTRATE JUDGE

**<u>NOTICE TO PARTIES</u>**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; <u>see also</u> Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies to:
The Honorable Elizabeth A. Kovachevich, United States District Court Judge
Counsel of Record